**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**

| | |
|---|---|
| BETTY STAUFFER, Individually and for Others Similarly Situated<br><br>v.<br><br>LIBERTY SENIOR LIVING, LLC | Case No. 7:23-CV-573<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

# ORIGINAL COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Betty Stauffer (Stauffer) brings this collective action to recover unpaid overtime and other damages from Liberty Senior Living (Liberty).

2. Stauffer worked for Liberty as a Certified Nursing Assistant (CNA) and a Medical Technician at Liberty's Bradley Creek Health Center in Wilmington, North Carolina.

3. Like the Putative Class Members (as defined below), Stauffer regularly worked more than 40 hours in a week.

4. But these workers never receive overtime when they work more than 40 hours in a workweek.

5. Instead of paying overtime, Liberty pays Stauffer and the Putative Class Members the same hourly rate for all hours worked, including those in excess of 40 hours in a workweek (or "straight time for overtime").

6. Liberty's straight time for overtime pay scheme violates the Fair Labor Standards Act (FLSA) because it deprives Stauffer and the Putative Class Members of overtime pay at the proper premium rates.

7. Further, Liberty does not pay Stauffer and the Putative Class Members for all the hours they worked.

8. Instead, Liberty automatically deducts 30 minutes per shift from their work time for so-called meal breaks.

9. Stauffer and the Putative Class Members thus are not paid for that time.

10. But Liberty fails to provide Stauffer and the Putative Class Members with *bona fide* meal breaks.

11. Instead, Liberty requires Stauffer and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions, even during their unpaid "meal breaks."

12. Liberty's auto-deduction policy violates the FLSA by depriving Stauffer and the Putative Class Members of overtime pay for all overtime hours worked.

## JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. This Court has general personal jurisdiction over Liberty because Liberty is a domestic corporation headquartered in Wilmington, North Carolina.

15. Venue is proper because Liberty's headquarters is in Wilmington, North Carolina, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

16. Stauffer worked for Liberty as a CNA and a Medical Technician at Liberty's Bradley Creek Health Center in Wilmington, North Carolina from approximately August 2018 to April 2021.

17. Throughout her employment, Liberty paid Stauffer on an hourly basis.

18. Indeed, throughout her employment, Liberty paid Stauffer the same hourly rate for all hours worked, including those in excess of 40 in a workweek (or "straight time for overtime").

19. Further, throughout her employment, Liberty subjected Stauffer to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

20. Stauffer's written consent is attached as **Exhibit 1**.

21. Stauffer brings this action on behalf of herself and other similarly situated employees who Liberty paid under its straight time for overtime pay scheme.

22. Liberty paid each of these workers the same hourly rate for all hours worked, including those in excess of 40 in a workweek.

23. This collective of similarly situated employees is defined as:

> **All Liberty employees who were paid straight time for overtime at any time during the past 3 years ("Straight Time Class Members" or "Straight Time Class").**

24. Stauffer also brings this action on behalf of herself and all hourly, Liberty employees who were subject to Liberty's automatic meal break deduction policy.

25. Liberty uniformly requires all these employees to remain on-duty and perform work throughout their shifts, including their unpaid "meal breaks."

26. This collective of similarly situated employees is defined as:

> **All hourly Liberty employees who received an automatic meal period deduction at any time during the past 3 years ("Meal Break Class Members" or "Meal Break Class").**

27. The Straight Time Class Members and the Meal Break Class Members are collectively referred to as the "Putative Class Members."

28. Liberty is a North Carolina corporation that maintains its headquarters in Wilmington, North Carolina.

29. Liberty can be served with process by serving its registered agent: **Yoel Balter, 2334 South 41st Street, Wilmington, North Carolina, 2840**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

30. At all relevant times, Liberty was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

31. At all relevant times, Liberty was an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

32. At all relevant times, Liberty was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, equipment, cellphones, and personal protective equipment – that have been moved in or produced for commerce.

33. At all relevant times, Liberty has had an annual gross volume of sales made or business done of not less than $500,000 each year.

34. At all relevant times, Stauffer and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

35. Liberty uniformly paid Stauffer and the Straight Time Class Members the same hourly rate for all hours worked, including those in excess of 40 in a workweek.

36. As a result, Liberty failed to paid Stauffer and the Straight Time Class Members overtime at the proper premium rates for all overtime hours worked in violation of the FLSA.

37. Liberty's straight time for overtime pay policy, which deprives Stauffer and the Straight Time Class Members of overtime compensation at the proper premium rates is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

38. Further, Liberty uniformly deducted 30 minutes from Stauffer and the Meal Break Class Members' wages for so-called "meal breaks," even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

39. As a result, Liberty failed to pay Stauffer and the Meal Break Class Members for this compensable work, including overtime, in violation of the FLSA.

40. Liberty's automatic meal break deduction policy, which deprives Stauffer and the Meal Break Class Members of overtime compensation for the weeks in which these workers work over 40 hours is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

41. Liberty is a healthcare provider that operates senior care facilities across the country.

42. Liberty employs patient care workers, including Stauffer and the Putative Class Members, to provide patient care services and treat the patients in its various healthcare facilities.

43. Liberty uniformly pays these employees on an hourly basis.

44. Indeed, Liberty uniformly pays Stauffer and the Putative Class Members the same hourly rate for all hours worked, including those in excess of 40 hours in a workweek (or "straight time for overtime").

45. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

46. For example, Stauffer worked for Liberty as a CNA and a Medical Technician at Liberty's Bradley Creek Health Center in Wilmington, North Carolina from approximately August 2018 to April 2021.

47. As a CNA, Stauffer's primary responsibility was to ensure the personal and daily care of the residents, including giving baths and showers, changing diapers, and ensuring the residents were eating.

48. As a Medical Technician, Stauffer's primary responsibilities included administering medicines to the residents, checking the residents' blood pressure and temperatures, wound dressing, and assisting other patient care staff with medical procedures and treatments.

49. Throughout her employment, Liberty paid Stauffer on an hourly basis.

50. Specifically, Liberty paid Stauffer the same hourly rate for all hours worked, including those in excess of 40 hours in a workweek.

51. Liberty uniformly paid Stauffer and the Putative Class Members under its straight time for overtime pay scheme that deprives these employees of overtime pay at the proper premium rat when they work more than 40 hours in a week in violation of the FLSA.

52. Stauffer and the Putative Class Members are Liberty's hourly employees.

53. Stauffer and the Putative Class Members are not paid a guaranteed salary.

54. If Stauffer and the Putative Class Members work fewer than 40 hours in a week, Liberty only pays them for the hours they actually worked.

55. But Stauffer and the Putative Class Members regularly work more than 40 hours in a week.

56. Indeed, Liberty typically schedules Stauffer and the Putative Class Members to work 12+ hours a day for at least 4 days a week.

57. Stauffer and the Putative Class Members work in accordance with the schedule set by Liberty.

58. Despite Stauffer and the Putative Class Members regularly working overtime, Liberty paid them the same hourly rate for all hours worked, including those in excess of 40 in a workweek, in violation of the FLSA.

59. Rather than receiving time and half as required by the FLSA, Liberty only paid Stauffer and the Putative Class Members "straight time" pay for the overtime hours they worked.

60. Liberty's "straight time for overtime" pay scheme violates the FLSA because it deprives Stauffer and the Putative Class Members of overtime pay at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek.

61. Further, throughout her employment, Liberty subjected Stauffer to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks," regardless of whether she actually received a *bona fide* meal break.

62. But Stauffer never receives *bona fide* meal breaks.

63. Instead, Liberty requires Stauffer to remain on-duty and working throughout her shifts, continuously subjecting her to interruptions, including during her unpaid meal periods.

64. Stauffer and the Putative Class Members performed their jobs under Liberty's supervision, and using materials, equipment, and technology approved and supplied by Liberty.

65. Liberty requires Stauffer and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

66. At the end of each pay period, Stauffer and the Putative Class Members received wages from Liberty that were determined by common systems and methods that Liberty selected and controlled.

67. Liberty requires its hourly employees, including Stauffer and the Putative Class Members, to record their hours worked using Liberty's timeclock system.

68. Liberty subjects its hourly employees, including Stauffer and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

69. Specifically, Liberty automatically deducts 30 minutes from Stauffer and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal break.

70. But Liberty fails to provide Stauffer and the Putative Class Members with *bona fide* meal periods.

71. Instead, Liberty requires Stauffer and the Putative Class Members to remain on-duty and working throughout their shifts, continuously subjecting them to interruptions, including during their unpaid meal periods.

72. This unpaid time is compensable under the FLSA because Liberty knew, or should have known, that (1) Stauffer and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they entirely skipped the meal period due to work demands, and/or (4) the meal period was less than 30 minutes.

73. Liberty failed to exercise its duty to ensure Stauffer and the Putative Class Members were not performing work that Liberty did not want performed during their unpaid "meal breaks."

74. Despite accepting the benefits, Liberty did not pay Stauffer and the Putative Class Members for the compensable work they performed during their "meal breaks."

75. Thus, under Liberty's uniform automatic meal break deduction policy, Stauffer and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they work in excess of 40 hours in violation of the FLSA.

76. Liberty also subjects Stauffer and the Putative Class Members to its uniform policy of automatically rounding these employees' recorded time punches to the nearest 15-minute increment.

77. Liberty's uniform rounding policy violates the FLSA by depriving Stauffer and the Putative Class Members of overtime pay for all overtime hours worked because Liberty fails to include all work time in these employees' total hours worked.

78. Liberty knows Stauffer and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because Liberty expects and requires these employees to do so.

79. But Liberty does not pay Stauffer and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA.

80. Stauffer worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

81. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

82. Indeed, Liberty typically schedules Stauffer and the Putative Class Members to work 12+ hours a day for at least 4 days a week.

83. And Stauffer and the Putative Class Members regularly are also required to work during their unpaid meal breaks "off the clock" in order to complete their job duties and responsibilities.

84. As a result, Stauffer and the Putative Class Members work in excess of 40 hours in a typical workweek.

85. When Stauffer and the Putative Class Members worked more than 40 hours in a workweek, Liberty did not pay them 1.5 times their regular hourly rate for all overtime hours worked due to Liberty's straight time for overtime pay scheme and Liberty's failure to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek.

86. Liberty knew, or should have known, it was subject to the FLSA, including its overtime provisions.

87. Liberty knew, or should have known, the FLSA requires it to pay employees, including Stauffer and the Putative Class Members, overtime at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

88. Liberty knew, or should have known, Stauffer and the Putative Class Members worked more than 40 hours in a week.

89. Liberty knew, or should have known, Stauffer and the Putative Class Members regularly worked during their unpaid meal breaks because Liberty expected and required them to do so.

90. Liberty knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA.

91. Liberty knowingly, willfully, and/or in reckless disregard carried out its illegal straight time for overtime and automatic deduction policies that deprived Stauffer and the Putative Class Members of overtime compensation at the proper premium rates for all overtime hours worked in violation of the FLSA.

92. Nonetheless, Liberty failed to pay Stauffer and the Putative Class Members overtime at the proper premium rate for all hours these employees worked in excess of 40 hours in a workweek.

93. Liberty's failure to pay overtime compensation to Stauffer and the Putative Class Members was neither reasonable, nor was the decision not to pay these employees overtime made in good faith.

### COLLECTIVE ALLEGATIONS

94. Stauffer brings her claims as a collective action under the FLSA.

95. The Putative Class Members were victimized by Liberty's pattern, practice, and/or policy which is in willful violation of the FLSA.

96. Other Putative Class Members worked with Stauffer and indicated they were paid in the same manner, performed similar work, and were subject to Liberty's same illegal employment policies.

97. Based on her experiences with Liberty, Stauffer is aware Liberty's illegal practices were imposed on the Putative Class Members.

98. The Putative Class Members are similarly situated in all relevant respects.

99. Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

100. Therefore, the specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

101. Rather, the Putative Classes are held together by Liberty's uniform straight time for overtime and automatic meal break deduction policies, which systematically deprived Stauffer and the Putative Class Members of overtime pay at the proper premium rates for all hours worked in excess of 40 in a workweek.

102. The Putative Class Members are similarly denied overtime when they work more than 40 hours per week.

103. The overtime owed to Stauffer and the Putative Class Members will be calculated using the same records and using the same formula.

104. Stauffer and the Putative Class Members sustained damages arising out of Liberty's illegal and uniform employment policies.

105. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Liberty's records, and there is no detraction from the common nucleus of liability facts.

106. Therefore, the issue of damages does not preclude collective treatment.

107. Stauffer knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

108. Liberty is liable under the FLSA for failing to pay overtime to Stauffer and the Putative Class Members.

109. As part of its regular business practices, Liberty intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Stauffer and the Putative Class Members.

110. Liberty's illegal straight time for overtime and automatic meal break deduction policies deprived Stauffer and the Putative Class Members of the premium overtime wages they are owed under federal law.

111. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

112. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

113. The Putative Class Members are known to Liberty, are readily identifiable, and can be located through Liberty's records.

### CAUSE OF ACTION
### VIOLATIONS OF THE FLSA

114. Stauffer realleges and incorporates all other paragraphs by reference.

115. Stauffer brings her FLSA claim as a collective action under 29 U.S.C. § 216(b).

116. Liberty violated, and is violating, the FLSA by failing to pay Stauffer and the Putative Class Members overtime at the proper premium rates for all hours worked in excess of 40 in a single workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

117. Throughout the relevant period, Liberty paid Stauffer and the Putative Class Members the same hourly rate for all hours worked, including those worked in excess of 40 hours in a workweek.

118. Throughout the relevant period, Liberty expected and required Stauffer and the Putative Class Members to remain on-duty and be available to work during their unpaid "meal breaks."

119. Stauffer and the Putative Class Members have been harmed as a direct and proximate result of Liberty's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Liberty derived a direct and substantial benefit.

120. Liberty knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Stauffer and the Putative Class Members overtime compensation at the proper premium rates for all overtime hours worked.

121. Liberty's failure to pay Stauffer and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay them overtime at the proper premium rate for all overtime hours worked made in good faith.

122. Accordingly, Stauffer and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

## JURY DEMAND

123. Stauffer demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Stauffer, individually and on behalf of the Putative Class Members, seeks the following relief:

    a. An Order designating the FLSA Collective as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all

Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. An Order pursuant to Section 16(b) of the FLSA finding Liberty liable for unpaid back wages due to Stauffer and the Putative Class Members and for liquidated damages in amount equal to their unpaid compensation;

c. Judgment awarding Stauffer and the Putative Class Members all unpaid overtime and other damages available under the FLSA;

d. An Order awarding attorney's fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Respectfully submitted this the 30th day of March 2023,

By: /s/ *Tamara Huckert*
Christopher Strianese, NC Bar No. 46918
chris@strilaw.com
Tamara Huckert, NC Bar No. 35348
tamara@strilaw.com
**STRIANESE HUCKERT LLP**
3501 Monroe Rd.
Charlotte, NC 28205
Telephone:     704-966-2101

Michael A. Josephson*
mjosephson@mybackwages.com
Andrew W. Dunlap*
adunlap@mybackwages.com
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone:     713.352.1100
Facsimile:     713.352.3300

Richard J. (Rex) Burch*
rburch@brucknerburch.com
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone:     713.877.8788
Facsimile:     713.877.8065

William C. (Clif) Alexander*
clif@a2xlaw.com
Austin W. Anderson*
austin@a2xlaw.com
**ANDERSON ALEXANDER, PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone:     361.452.1279
Facsimile:     361.452.1284

**Pro Hac Vice Applications Forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**

- 15 -

Case 7:23-cv-00573-BO-BM     Document 1     Filed 03/30/23     Page 15 of 15